ADELAIDE E. JOHNSTON, Respondent, *against* FRANCIS J. C. FERRIS, Appellant.

(Decided December 5th, 1887.)

On a motion to vacate an attachment, it appeared that, prior to January 14th, 1887, defendant was engaged in business as an importer of laces, having a special partner; that on that day, the firm, being largely indebted, sold out its business and assets to C., who had, up to that time, been a clerk in its employ and was a nephew of the special partner; that defendant still continued in the business, superintending it as he had done before, and that on September 26th, 1887, C. made a general assignment for the benefit of creditors, having just previously confessed judgment to defendant for $26,265 for alleged loans of money, and having also assigned to defendant $12,000 of book accounts, at the same time claiming to owe defendant $75,000 out of a total of liabilities of $150,000. Plaintiff claimed that, at the time of the sale of the business, the firm was indebted to her in an amount exceeding $19,000 for money loaned; that at that time defendant informed her agent that he had sold out the business to C. for $100, which sum was all that defendant had in the world; and that C. was amply responsible, and had ample means to carry on the business; and that in reliance upon such representations she accepted the notes of C. without indorsement for her claim. *Held*, that the facts were suf-

ficient to sustain the attachment, and that the fraud by which plaintiff was induced to take the notes of C. in payment of her claim, authorized her to disaffirm the agreement and revive the original indebtedness of defendant.

An agreement under which plaintiff was to receive one-half of defendant's share of profits in a business, as compensation for a loan of money, is not necessarily void for usury, and, as between the parties, does not constitute a partnership.

The allegation that an account was stated between plaintiff and defendant, " and upon such statement a balance of . . . was found to be due from the defendant to the plaintiff," sufficiently charges a breach of contract, under section 636 of the Code of Civil Procedure, to sustain an attachment.

APPEAL from an order of this court denying a motion to vacate an attachment.

The facts are stated in the opinion.

*John J. Adams,* for appellant.

*W. Bourke Cochran,* for respondent.

J. F. DALY, J. — It appears that the defendant, prior to January 14th, 1887, was engaged in business as an importer of laces at 272 Church Street, having a special partner, Mrs. M. S. C. Jones, and doing business under the firm name of F. J. C. Ferris & Co. The firm was largely indebted, and on that date sold out its business and outstandings to one Cowlin, who had been, up to that time, a clerk in its employ, and who was a nephew of the special partner. Plaintiff claims that, at and prior to the said date, the firm was indebted to her in an amount exceeding $19,000 for money loaned; that about said date defendant informed her agent and husband Alexander Johnston that he had sold out the business to Cowlin for $100, which sum was all that he, defendant, had in the world, and that Cowlin was amply responsible and had ample means to carry on the business; that, notwithstanding such sale, defendant still continued in the business, superintending it as he had done before; that on September 26th, 1887, Cowlin made a general assignment

for the benefit of creditors, having, however, just previously confessed judgment to defendant for $26,265 for alleged loans of money, and having also assigned to defendant $12,000 of good book accounts; and that Cowlin still pretends to owe defendant $75,000 out of a total liability of $150,000.

As to the indebtedness of the defendant's firm to her, plaintiff claims that it was settled and adjusted on May 9th, 1887, and an account stated between them, by which there was found due to plaintiff $19,702.78, of which no part has been paid except $2,022.40.

Defendant denies any indebtedness to plaintiff and any stating of account between them. He swears that plaintiff was a general partner in his firm, and that, after the sale to Cowlin, there was a dispute as to what interest she had, and whether her capital had not been wiped out by losses, and that in February, 1887, Cowlin, who had assumed all the indebtedness of the old firm, settled with Alexander Johnston, acting for his wife, the plaintiff, and agreed to pay her $17,197.85, and that plaintiff received the notes of Cowlin on February 5th, 1887, for $6,000, and on May 9th, 1887, for $10,425, which, with sundry charges against her before and after January 14th, 1887, made up the $17,197.85; and that on the receipt of the notes on May 9, 1887, the plaintiff and her husband gave a written receipt therefor expressed to be in full settlement of all claims and demands from James S. Cowlin and the limited co-partnership of F. J. C. Ferris & Co. in liquidation; that Johnston, acting for his wife, the plaintiff, endeavored to get defendant to indorse the said notes of Cowlin, but defendant refused; and defendant denies that he had anything to do with the business after he sold it to Cowlin on January 14th, 1887. The bookkeeper of Cowlin swears to payments made by Cowlin to plaintiff on the said notes, amounting to $4,500, leaving but $11,925 due besides interest; and also denies the plaintiff's allegations with respect to defendant's superintending the business after the sale. The defendant also swears that Cowlin has paid all the indebtedness of the old

Johnston v. Ferris.

firm, amounting to about $115,000 : and that he, defendant, has taken the lease of a store in this city, and intends to go on in business as soon as he can get relieved from this attachment.

The plaintiff and her husband deny that she was a partner of defendant: that as to the notes received from Cowlin, they were given to plaintiff by defendant on account of his indebtedness, but that there was no settlement or agreement made with Cowlin : that defendant, when he gave the Cowlin notes in February or March, stated that Cowlin was perfectly responsible and had ample means to carry on,the business ; that when the account was stated in May and the Cowlin notes accepted in payment and the receipt given, defendant represented that Cowlin was perfectly solvent and amply responsible, and that the notes were accepted in reliance upon those representations, which were false, as Cowlin was then insolvent, and has left the state since the assignment; and that as to the allegations of payments on account of the Cowlin notes, for all payments made before the account was stated defendant received credit.

It is manifest, from the facts disclosed in the affidavits, that the defendant has devised and carried out a scheme which was calculated to defraud the plaintiff and to benefit himself at the expense of the creditors of Cowlin as well. The sale of the co-partnership business to Cowlin with an agreement by the latter to assume the co-partnership debts ; the payment of such debts by Cowlin to the amount of $115,000 ; and the failure and assignment of Cowlin after having executed a confession of judgment to defendant by which the latter is enabled to re-possess himself of the stock in trade, or its proceeds, freed from the debts of the old concern, as well as from the debts incurred by Cowlin while he carried on the business, look like a scheme to defraud the creditors of the latter; while the same facts, coupled with the additional one of the representations made by defendant to plaintiff to induce her to accept Cowlin's notes without indorsement, for the debt due her from the former co-partnership (she being now left without success-

ful recourse as against Cowlin, the property he held being again swept into defendant's hands), show the plan by which plaintiff, in particular, was to be defrauded. If there were such a scheme of fraud, it undoubtedly originated, as plaintiff claims it did, with the sale by the co-partnership to Cowlin in January, 1887. The consideration of that sale was ostensibly the agreement by the vendee to pay the liabilities of the vendor. The nominal consideration was $100, which defendant then states is all that he possesses in the world. Yet when, a little over eight months after, Cowlin, who in the meantime has cleared off those liabilities, is about to fail, we find defendant his creditor for $26,000 money loaned, for which he receives a confession of judgment, which he satisfies out of the business carried on by Cowlin. The operation is such as might have been designed by one who, being indebted beyond the amount of his assets, wished to put his property out of his hands and subsequently to retake it, after having induced his creditors to look to the fraudulent vendee for their pay. The plaintiff was induced to look to Cowlin upon the strength of the apparently *bona fide* sale to him, and the defendant's assurances of his solvency, and no matter what denials defendant may make of fraudulent intention, the plaintiff was nevertheless defrauded by the scheme.

There seems also to be ground for holding that there was no actual and continued change of possession after the sale from defendant to Cowlin. An affidavit of one Richmond, who did business with both the old and the new concern, shows that defendant transacted business at the store the same after the assignment as before; and although defendant avers that Cowlin settled with plaintiff on his own account, it appears that Cowlin always claimed to be acting for defendant. The facts create, under the statute, the presumption that the sale was fraudulent, and the defendant's proof does not rebut the presumption.

But even if there were no facts to raise the statutory presumption, the evidence in the case shows an intent to defraud plaintiff. Cowlin was a party to it, for he was a mere pup-

pet in defendant's hands. He accepted the transfer of the latter's property in order to assist him in getting rid of his debts and going into business again with what he could realize from the operation.

Among the objections urged by defendant against the right to an attachment are sundry defenses to the alleged debt or claim of plaintiff. It is said that she is not a creditor, but a partner of F. J. C. Ferris. The written agreement establishes as between them the relation of debtor and creditor. As to third parties, a question of partnership might arise, but not between the parties to that agreement. There was no intention to create a partnership, and that she was not so considered is shown by the notice of dissolution, published by defendant, in which plaintiff is not mentioned.

It is also contended by defendant that if the agreement in question does not constitute a partnership, then it is void for usury. Plaintiff was to receive one-half of defendant's share of profits as compensation for the loan of the money, but such profits are not in addition to interest, and they might never exceed the lawful rate of interest. The money she was entitled to draw was to be charged to profits, but if it exceeded the profits it was undoubtedly chargeable to principal. The agreement did not secure to her anything in excess of six per cent. per annum for the loan of her money, and it was not therefore necessarily void for usury (*Richardson* v. *Hughitt*, 76 N. Y. 58).

The fraud by which plaintiff was induced to agree to take the notes of Cowlin in payment of defendant's indebtedness, authorizes her to disaffirm that agreement, and revives the original indebtedness of defendant; and if, as seems certain, the business carried on in the name of Cowlin was the business of defendant, the payments on account of Cowlin's notes made from the business were merely payments by defendant on his own indebtedness, and there is nothing to restore as a condition of disaffirmance.

As to the contention of defendant that the papers on which the attachment was granted do not show that there

was any breach of contract (Code Civ. Pro. § 636), I do not see that the statement of plaintiff's cause of action is open to criticism. It is suggested that there is no charge that the debt was due, or of a demand of payment. The allegation is that an account was stated between the plaintiff and defendant, " and upon such statement a balance of $19,702.78 was found to be due from the defendant to the plaintiff."

The order denying the motion to vacate the attachment should be affirmed, with costs.

LARREMORE, Ch. J., and VAN HOESEN, J., concurred.

Order affirmed, with costs.